IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
**DANVILLE DIVISION**

CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

FEB 12 2025

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

**STANLEY WHITEMAN,**

      *Plaintiff,*

**V.**

**LUKE PARRY ENTERPRISES, LLC,**

**SERVE:**   R/A: Frederick Gerson
Bank of America Center
1111 East Main Street
16th Floor
Richmond, Virginia 23219

-AND-

**RESTAURANT 357 LLC,**

**SERVE:**   R/A: Frederick Gerson
Bank of America Center
1111 East Main Street
16th Floor
Richmond, Virginia 23219

-AND-

**120 RESTAURANT LLC,**

**SERVE:**   R/A: Frederick Gerson
Bank of America Center
1111 East Main Street
16th Floor
Richmond, Virginia 23219

-AND-

**1220 COMMERCE GARAGE, LLC,**

**SERVE:**   R/A: Stephan Parry
2810 Walhala Drive
Richmond, Virginia 23236

-AND-

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 4:25CV00007

**JURY TRIAL DEMANDED**

**530 CRAGHEAD LLC**,                                                 )
                                                                      )
SERVE:      R/A: Frederick Gerson                                     )
            Bank of America Center                                    )
            1111 East Main Street                                     )
            16th Floor                                                )
            Richmond, Virginia 23219                                  )
-AND-                                                                 )
                                                                      )
**8 & 10 WEST MAIN RESTAURANTS, LLC**,                                )
                                                                      )
SERVE:      R/A: Frederick Gerson                                     )
            Bank of America Center                                    )
            1111 East Main Street                                     )
            16th Floor                                                )
            Richmond, Virginia 23219                                  )
-AND-                                                                 )
                                                                      )
**ONE MARKET SQUARE LLC**,                                            )
                                                                      )
SERVE:      R/A: Clark H. Worth                                       )
            10 Franklin Rd SE Ste 900                                 )
            Roanoke, Virginia 24011                                   )
-AND-                                                                 )
                                                                      )
**416 RESTAURANT, LLC**,                                              )
                                                                      )
SERVE:      R/A: Frederick Gerson                                     )
            Bank of America Center                                    )
            1111 East Main Street                                     )
            16th Floor                                                )
            Richmond, Virginia 23219                                  )
                                                                      )
            *Defendants*.                                             )

## COMPLAINT

Stanley Whiteman ("Mr. Whiteman" or "Plaintiff"), by and through undersigned counsel,

brings this action against Defendants Luke Parry Enterprises, LLC ("Parry"), Restaurant 357 LLC

("Beamers"), 120 Restaurant LLC ("Clutch"), 1220 Commerce Garage LLC ("El Jefe"), 530

Craghead LLC ("Mucho"), 8 & 10 West Main Restaurants LLC ("Salem"), One Market Square

LLC ("Six n Sky"), and 416 Restaurant LLC ("Tucos") (collectively "Defendants") under the Fair

2

Labor Standards Act, 29 U.S.C. § 203 et seq. ("FLSA"), Virginia Wage Payment Act, Va. Code Ann. 40.1-29 et seq. ("VWPA"), Employee Retirement Security Act, 29 U.S.C. 1001 et seq. ("ERISA"), Va. Code § 40.1-27.3, and Virginia common law.

## I.    INTRODUCTION

1.    This case involves multiple wage payment violations against Defendants. Plaintiff worked for the Luke Parry Enterprise from June 2022 until May 2024. Throughout his employment, Plaintiff worked at multiple restaurants, which are all owned and operated under the Luke Parry Enterprise "umbrella." During Plaintiff's employment, Defendants committed multiple violations of federal and state law including: (1) Plaintiff was consistently underpaid on his hourly wage; (2) Plaintiff was not compensated for overtime hours; (3) Defendants did not compensate Plaintiff for "traveling time;" (4) and Defendants did not contribute to Plaintiff's employer-sponsored 401k plan.  Plaintiff made multiple complaints to Parry's Vice President, Jojo Soprano, about his underpayment.  Although Mr. Soprano promised to correct it, Plaintiff was never compensated for his unpaid wages.  On or around May 17, 2024, Plaintiff gave Mr. Soprano a final ultimatum – comply with Virginia law or he would be forced to resign.  However, Plaintiff's following paycheck, Plaintiff noticed that he had again been underpaid. As a result, Plaintiff was forced to resign in order to find an employer who would compensate him lawfully.

## II.    JURISDICTION AND VENUE

2.    This action arises under the Fair Labor Standards Act, 29 U.S.C. § 203 et seq. ("FLSA"), Va. Code Ann. 40.1-29 et seq. ("VWPA"), Employee Retirement Security Act, 29 U.S.C. 1001 et seq. ("ERISA"), Va. Code § 40.1-27.3, and Virginia common law.

3.    This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), 29 U.S.C. § 1132(a)(1), and 28 U.S.C. § 1331.

4.    This Court has supplemental subject matter jurisdiction over the claims arising under Virginia state law under 28 U.S.C.§ 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

5.    Venue lies in the Western District of Virginia, Lynchburg Division, under 28 U.S.C. § 1391(b)(2) because the unlawful employment practices documented in this Complaint occurred within the Commonwealth of Virginia.

## III.    PARTIES

6.    Plaintiff, Stanley Whiteman, is a resident of the Commonwealth of Virginia.

7.    Mr. Whiteman was employed by Defendants since 2022 and worked as a chef, Assistant Kitchen Manager, and Regional Kitchen Manager.

8.    Luke Parry Enterprises, LLC, ("Parry"), is Virginia limited liability company with its principal place of business located at 2810 Walhala Drive, Richmond, Virginia, 23236.

9.    At all relevant times, Jojo Soprano was Parry's Vice President and was Mr. Whiteman's main point of contract throughout his employment.

10.    Parry owns and operates multiple different restaurants.

11.    Mr. Whiteman performed work for multiple restaurants which were owned and operated by Parry.

12.    Each restaurant owned and operated by Parry is registered in its own name and Parry treats each restaurant as "separate" entities.

13.    However, because Parry owns and operates each restaurant and derives substantial economic benefits from the restaurants, all of these restaurants are "alter-egos" of the Parry enterprise.

14.    The restaurants Mr. Whiteman performed work for during his employment include Restaurant 357 LLC ("Beamers"), 120 Restaurant LLC ("Clutch"), 1220 Commerce Garage LLC ("El Jefe"), 530 Craghead LLC ("Mucho"), 8 & 10 West Main Restaurants LLC ("Salem"), One Market Square LLC ("Six n Sky"), and 416 Restaurant LLC ("Tucos").

15.    While each of the above entities is registered with the Virginia SCC as its own "separate" LLC, they are **all** owned and operated by Parry.

16.    Because Parry treated these restaurants as "separate entities," Parry failed to aggregate Mr. Whiteman's hours when he performed work at multiple different restaurants during a pay-period.

17.    Because Parry failed to do so, Mr. Whiteman consistently failed to earn overtime which he would otherwise had been entitled to if Parry treated the restaurants as "joint-employers."

18.    Mr. Whiteman was also consistently underpaid on his regular rate of pay.

19.    Plaintiff made multiple complaints of the underpayment and violations of federal and state law.

20.    Because Parry failed to correct Mr. Whiteman's underpayment, Mr. Whiteman was forced to resign from his job.

## IV.    LEGAL FRAMEWORK

### A. The Fair Labor Standards Act

21.    Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 203 et seq., establishes minimum wage, overtime pay, record keeping, and employment standards for employees in the private sector and in federal, state, and local government.

22.    Under 29 U.S.C. § 207(a)(1), "[n]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is

employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

23.     "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d).

24.     On or around March 16, 2020, the Wage and Hour Division of the Department of Labor made substantial changes to the previous doctrine referred to as the "joint employer doctrine," or 29 CFR §791.

25.     The Department of Labor has since adopted a four-factor balancing test to determine whether the employee is said to be a joint employee of both employers. The test looks at the ability to (1) hire and fire the employee; (2) supervise and controls the employee's work schedule or conditions of employment to a substantial degree; (3) determines the employee's rate and method of payment; and (4) maintains the employee's employment records.[1]

26.     Under 29 CFR § 785.38, "time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked."

27.     Under the FLSA it also unlawful "to discharge or in other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the [FLSA]." 29 U.S.C. § 215(a)(3).

---

[1] https://www.federalregister.gov/documents/2020/01/16/2019-28343/joint-employer-status-under-the-fair-labor-standards-act.

## B. Virginia Wage Payment Act

28.    Under the Virginia Wage Payment Act ("VWPA"), it is unlawful for an employer to withhold any part of an employee's wages subject to certain exemptions which are not relevant here. Va. Code Ann. § 40.1-29(C).

29.    Likewise, an employer who violates the FLSA are liable to their employees for the same damages and remedies provided under the FLSA as modified by Va. Code Ann. § 40.1-29(J).

30.    Under Va. Code Ann. § 40.1-29(J), "if an employer fails to pay wages to an employee in accordance with [the VWPA], the employee may bring an action … against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G [8%], and reasonable attorney fees and costs."

31.    Moreover, "[i]f the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section or § 40.1-29.2, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs." Id. "[A] person acts 'knowingly' if the person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information.

32.    Establishing that a person acted knowingly shall not require proof of specific intent to defraud. Va. Code Ann. § 40.1-29(J).

33.    Under Va. Code Ann. § 40.1-33.2, an employer shall not discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under § 40.1-29.

7

## C. Virginia's Whistleblower Statute, Va. Code § 40.1-27.3

34.     Under Va. Code § 40.1-27.3, "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee: [o]r a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor …."

35.     Under Va. Code § 40.1-27.3(C), "A person who alleges a violation of this section may bring a civil action in a court of competent jurisdiction within one year of the employer's prohibited retaliatory action.  The court may order as a remedy to the employee (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and cost."

## D. ERISA

36.     The Employee Retirement Income Security Act, ("ERISA") 29 U.S.C. § 1001, et seq., sets minimum standards for private employer-sponsored retirement plans and requires employers to act as a fiduciary for their employees.

37.     Under 29 U.S.C. § 1104(a), the employer and all plan fiduciaries shall discharge their duties with respect to an employee plan solely in the interest of the participants and beneficiaries for the purpose of providing benefits to the participants and their beneficiaries.

38.     Under 29 U.S.C. § 1132(a)(1), the participant of the plan may bring an action to recover benefits due to him under the terms of his plan and to enforce his rights under the terms of the plan.

## E. Breach of Contract

39.     Under the common of Virginia, to prove a breach of an oral contract, a plaintiff must first prove that a valid contract existed. "[T]here must be a complete agreement which requires acceptance of an offer, as well as valuable consideration." Heon v. Won, 111 Va. Cir. 108 (Culpeper County 2023).

40.     A breach of contract is "(1) a legally enforceable obligation of a Defendant to a plaintiff; (2) the Defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Ramos v. Wells Fargo Bank, NA, 289 Va. 321, 323 (2015) (quoting Filak v George, 267 Va. 612, 619 (2004)).

41.     Damages in a breach of contract claim "consist of damages flowing from the breach as well as consequential damages, i.e., those damages reasonably foreseeable by the contracting parties at the time they formed the contract." Freeman v. Doubletree by Hilton, 90 Va. Cir. 182, 189 (Cir. Ct. 2015) (quoting Kamlar Corp v. Haley, 224 Va. 699, 706 (1983)).

## V.    STATEMENT OF FACTS

42.     Mr. Whiteman has worked in the restaurant industry since he was 16 years old and has performed almost every role in the industry such as food prep, washer, cashier, short order, cook, waiter, assistant manager, kitchen manager, and finally being a regional chef.

43.     Mr. Whiteman is likewise very familiar with Virginia wage laws and how, when, and the amount Mr. Whiteman must be paid for his time.

44.     Sometime in June 2022, Mr. Whiteman was interested in finding a second job and a friend of Mr. Whiteman, who was a regional chef with Parry, told Mr. Whiteman that Parry was looking to hire other cooks.

45. Mr. Horn told Mr. Whiteman to meet with the general managers at the time, Allison Burton and Sam Aguilera.

46. After meeting with Ms. Burton and Mr. Aguilera, Mr. Whiteman was hired as a cook for 8 & 10 West Main Restaurants LLC ("Salem").

47. Mr. Whiteman was originally compensated $15 per hour and received small raises over the following few months and eventually began being paid $19 per hour.

48. Towards the end of September 2022, Mr. Whiteman asked Jojo Soprano, Parry's Vice President at the time, if he could work more hours and also have a pay increase.

49. Mr. Soprano told Mr. Whiteman that along with his usual shifts at Salem, Mr. Whiteman could also begin working shifts at 416 Restaurant LLC ("Tucos").

50. Mr. Soprano approved a raise and told Mr. Whiteman he would begin being compensated $22 per hour for his work at both Tucos and Salem.

51. On or around October 5, 2022, Mr. Whiteman began working shifts at Tucos.

52. However, although Mr. Soprano told Mr. Whiteman he would be compensated $22 per hour, his first paycheck for Tucos was paid at only $19 per hour.

53. When Mr. Whiteman asked Mr. Soprano why he wasn't being compensated at $22 per hour, Mr. Soprano apologized and stated he would fix it.

54. While the following paychecks for Mr. Whiteman reflected the agreed upon rate of $22 per hour, Mr. Whiteman was never compensated for his first paycheck from Tucos of $19 per hour.

55. Likewise, Mr. Whiteman's following two paychecks for Salem were also compensated at only $19 per hour.

56.    Again, Mr. Whiteman complained to Mr. Soprano that his paychecks were incorrect and that he should have been receiving $22 per hour.

57.    Mr. Soprano again apologized and said he would correct it.

58.    While Mr. Whiteman's December 14, 2022, paycheck reflected the $22 per hour rate, Mr. Whiteman's previous two paychecks were **never** corrected.

59.    Not only was Mr. Whiteman's rate of pay incorrect, but Parry also failed to compensate Mr. Whiteman appropriately when he worked overtime.

60.    Because Mr. Whiteman was working at both Salem and Tucos regularly, he often worked over 40 hours during the week between the two restaurants.

61.    However, Parry did not aggregate Mr. Whiteman's hours and instead **only** compensated Mr. Whiteman overtime when her worked over 40 hours in a week at **each individual restaurant**.

62.    Salem and Tucos are "alter egos" of each other as both locations were managed and operated by Parry and utilized a common workforce.

63.    While each restaurant had its own General Manager, Parry owned and operated both restaurants and all General Managers had to report to Parry.

64.    Mr. Whiteman was also told that if he ever had any issues, to reach out to Jojo Soprano, the Vice President of Parry at the time, or Parry's Human Resources Manager, Christina Hutchinson.

65.    Moreover, all of Mr. Whiteman's paychecks would be managed by the same third party service called "Paychex."

11

66.    Before Mr. Whiteman could work for another restaurant, Mr. Whiteman had to be "hired" at that specific location and his W-2 form was simply transferred from restaurant to restaurant.

67.    Because Parry treated Salem and Tucos as separate entities rather than under the umbrella of Parry, Mr. Whiteman's hours were not aggregated.

68.    For example, during the period October 5, 2022, to October 18, 2022, Mr. Whiteman worked 42.87 hours for Salem and 38.95 hours for Tucos.

69.    When aggregated, Mr. Whiteman's total hours for that period are a total of 81.82 hours, representing at least 1.82 hours of overtime beyond the maximum 80 hours he could work without being paid overtime.

70.    Because these hours should have been aggregated, Mr. Whiteman was underpaid by $51.87.

71.    Mr. Whiteman pointed this out to Mr. Soprano and asked why he was not being paid overtime.

72.    Mr. Soprano responded that because each restaurant is "its own" LLC, Mr. Whiteman could **only** be compensated overtime when he worked more than 40 hours at **each specific restaurant**.

73.    The following are pay-periods in which Mr. Whiteman's hours were miscalculated when he worked at both Salem and Tucos:[2]

---

[2] While these periods are all Mr. Whiteman is currently aware of, he no longer has access to his paystubs for Salem and other restaurants. Mr. Whiteman was able to access these through Paychex, Parry's third-party service which handles payroll. Since Mr. Whiteman's termination, he can no longer access paystubs for Salem and the other restaurants he performed work for. Mr. Whiteman therefore further alleges that there may exist additional pay-periods in which Mr. Whiteman was underpaid.

    a.  November 30, 2022 – December 13, 2022

        i.  Total hours at Tucos: 74.15.

        ii.  Total hours at Salem: 8.32.

        iii.  Total hours aggregated between both: 82.47.

        iv.  Total minimum hours of overtime: 2.47.

        v.  Underpayment: **$81.51**.

    b.  December 14, 2022 – December 27, 2022

        i.  Total hours at Tucos: 73.03.

        ii.  Total hours at Salem: 10.00.

        iii.  Total hours aggregated between both: 83.03.

        iv.  Total minimum hours of overtime: 3.03.

        v.  Underpayment: **$99.99**.

    c.  February 8, 2023 – February 21, 2023

        i.  Total hours at Tucos: 74.15.

        ii.  Total hours at Salem: 8.32.

        iii.  Total hours aggregated between both: 82.47.

        iv.  Total minimum hours of overtime: 2.47.

        v.  Underpayment: **$104.28**.

74.    When combined, the total amount of overtime Mr. Whiteman was underpaid while working for both Salem and Tucos is at least **$285.78**.

75.    On multiple occasions, Mr. Whiteman would be required to work at both Salem and Tucos on the **same day**.

76. Mr. Whiteman would therefore finish working a shift at one restaurant, clock out, and then drive to the other restaurant and clock in.

77. Mr. Whiteman was **never compensated** for any of his time spent traveling from one restaurant to the other.

78. After Mr. Whiteman began working at Tucos, Mr. Soprano told Mr. Whiteman he would begin being compensated at the rate of $22 per hour for **both Salem and Tucos**.

79. However, on multiple occasions after Mr. Whiteman was supposed to be compensated at the rate of $22 per hour, he was paid at a lower rate. The following are pay periods which Mr. Whiteman was compensated at a lower rate per hour rather than the $22 per hour while working at Salem:

    a. February 8, 2023 – February 21, 2023.

        i. Total hours: 4.32

        ii. Rate of pay: $19 per hour

        iii. Underpayment: **$12.96**

    b. February 22, 2023 – March 7, 2023.

        i. Total hours: 0.63

        ii. Rate of pay: $19 per hour

        iii. Underpayment: **$1.89**

    c. March 22, 2023 – April 4, 2023.

        i. Total hours: 2.80

        ii. Rate of pay: $19 per hour

        iii. Underpayment: **$8.40**

    d.  October 4, 2023 – October 17, 2023.

        i.    Total hours: 63.18

        ii.    Rate of pay: $16 per hour

        iii.    Underpayment: **$379.08**

    e.  November 15, 2023 – November 28, 2023.

        i.    Total hours: 63.97

        ii.    Rate of pay: $16 per hour

        iii.    Underpayment: **$383.82**

    f.  November 19, 2023 – December 12, 2023.

        i.    Total hours: 79.03

        ii.    Rate of Pay: $16 per hour

        iii.    Underpayment: **$474.18**

        iv.    Total overtime hours: 6

        v.    Overtime rate: $25 per hour (instead of $33/hr.)

        vi.    Overtime underpayment: **$48**

    g.  December 13, 2023 – December 26, 2023.

        i.    Total hours: 56.13

        ii.    Rate of pay: $20 per hour

        iii.    Underpayment: **$112.26**

80.    When combined, the total amount Mr. Whiteman was underpaid during the 2023 year while working for Salem was **$1,420.59**.

81.    While Mr. Whiteman complained multiple times that his pay was constantly wrong, Mr. Whiteman was never rewarded with retro pay to correct these mistakes.

82.    Around May 2023, Mr. Whiteman was promoted to Regional Chef.

83.    As a Regional Chef, Mr. Whitman was responsible for training, scheduling truck orders, cooking, ensuring all the locations were running efficiently, and helped create menus.

84.    While Tucos was still Mr. Whiteman's "main restaurant," he was thereafter required to perform work at multiple other restaurants that Perry also owned and operated.

85.    These restaurants included Restaurant 357 LLC ("Beamers"), 120 Restaurant LLC ("Clutch"), 1220 Commerce Garage LLC ("El Jefe"), 530 Craghead LLC ("Mucho"), and One Market Square LLC ("Six n Sky").

86.    Again, although all these restaurants are their own LLC, all are run vicariously through the Parry enterprise and are "alter egos" of Parry.

87.    Mr. Wihiteman's hours were again not aggregated.

88.    The following are pay periods in which Mr. Whiteman's hours were miscalculated:[3]

    a.   July 26, 2023 – August 8, 2023.

        i.    8 & 10 West Main Restaurants LLC ("Salem"): 61.63 hours.

        ii.   530 Craghead LLC ("Mucho"): 29.73 hours.

        iii.  1220 Commerce Garage LLC ("El Jefe"): 3.1 hours.

        iv.   120 Restaurant LLC ("Clutch"): 5.87 hours.

    b.   August 9, 2023 – August 22, 2023.

        i.    8 & 10 West Main Restaurants LLC ("Salem"): 57.98 hours.

        ii.   416 Restaurant LLC ("Tucos"): 12.7 hours.

---

[3] Like some of Mr. Whiteman's paystubs for Tucos, Mr. Whiteman is unable to access multiple paystubs from these other entities he performed work for. Mr. Whiteman therefore believes that there exist other paystubs which may have been miscalculated.

16

      iii.    530 Craghead LLC ("Mucho"): 17.6 hours.

      iv.    1220 Commerce Garage LLC ("El Jefe"): 17.93 hours.

      v.    Restaurant 357 LLC ("Beamers"): 5.87 hours.

c.  August 23, 2023 – September 5, 2023

      i.    Tucos: 9.9 hours.

      ii.    El Jefe: 77.38 hours.

      iii.    Clutch: 3.7 hours.

d.  September 6, 2023 – September 19, 2023

      i.    Tucos: 30 hours.

      ii.    Mucho: 55.05 hours.

e.  September 20, 2023 – October 3, 2023

      i.    Salem: 47.67 hours.

      ii.    Mucho: 40 hours.

      iii.    El Jefe: 11.92 hours.

f.  October 4, 2023 – October 17, 2023

      i.    Salem: 63.18 hours.

      ii.    Mucho: 16 hours.

      iii.    El Jefe: 30.12 hours.

g.  December 13, 2023 – December 26, 2023

      i.    Salem: 93.73 hours.

      ii.    Beamers: 5.53 hours.

89.     When aggregated, the pay period for July 26, 2023, to August 8, 2023, Mr. Whiteman worked a total of 100.33 hours representing 20.33 hours of unpaid overtime. Mr. Whiteman was therefore underpaid a total amount of **$670.89** for that pay period.

90.     When aggregated, the pay period for August 9, 2023, to August 22, 2023, Mr. Whiteman worked a total of 106.21 hours representing 26.21 hours of unpaid overtime. Mr. Whiteman was therefore underpaid a total amount of **$864.93** for that pay period.

91.     When aggregated, the pay period for August 23, 2023, to September 5, 2023, Mr. Whiteman worked a total of 90.98 hours representing 10.98 hours of unpaid overtime. Mr. Whiteman was therefore underpaid a total amount of **$362.34** for that pay period.

92.     When aggregated, the pay period for September 6, 2023, to September 19, 2023, Mr. Whiteman worked a total of 85.05 hours representing 5.05 hours of unpaid overtime. Mr. Whiteman was therefore underpaid a total amount of **$166.65** for that pay-period.

93.     When aggregated, the pay period for September 20, 2023, to October 3, 2023, Mr. Whiteman worked a total of 99.59 hours representing 19.59 hours of unpaid overtime. Mr. Whiteman was therefore underpaid a total amount of **$646.47** for that pay period.

94.     When aggregated, the pay period for October 4, 2023, to October 17, 2023, Mr. Whiteman worked a total of 109.30 hours representing 29.30 hours of unpaid overtime. Mr. Whiteman was therefore underpaid a total amount of **$966.90** for that pay period

95.     When aggregated, the pay period for December 13, 2023, to December 2023, Mr. Whiteman worked a total of 99.26 hours representing 19.26 hours of unpaid overtime. Mr. Whiteman was therefore underpaid a total amount of **$635.58** for that pay period.

96.     While Parry failed to calculate Mr. Whiteman's hours correctly, Parry also continuously failed to compensate Mr. Whiteman his agreed upon rate of $22 per hour throughout the 2023 year.

97.     Mr. Whiteman made multiple complaints to Mr. Soprano throughout the 2023 year that his paychecks were wrong.

98.     Every time Mr. Whiteman complained, Mr. Soprano told Mr. Whiteman that he was sorry and would correct it.

99.     However, Mr. Whiteman was **never** compensated with retroactive pay to cure his pay deficiencies.

100.    Beginning around November 2023, **every paycheck** he received from Parry was compensated at a rate lower than the promised $22 per hour.

101.    Again, Mr. Whiteman made multiple complaints to Mr. Soprano; however, those complaints always receive the same empty promise from Mr. Soprano.

102.    Around April 2024, Mr. Soprano approached Mr. Whiteman and told him he would compensate Mr. Whiteman $70 in unpaid wages but first he needed to sign a document which said the $70 would cover his lost wages and that he would thereafter agree to work for $18.50 per hour.

103.    Because Mr. Whiteman knew he was entitled to much more in unpaid wages, he refused to sign the document.

104.    A few days later, Mr. Soprano called Mr. Whiteman and told him he had "good news and bad news."

105.    The "bad news" was that Steve Parry, Parry's President, would not pay him $22 per hour at his current locations but the "good news" was that Parry would pay him $22 per hour if he went and worked at One Market Square LLC ("Six n Sky").

106.    Mr. Whiteman agreed and began working at Six n Sky around May 2024.

107.    However, once Mr. Whiteman received his first paycheck, he was compensated at a rate of $18.50 per hour.

108.    Mr. Whiteman thereafter complained to Mr. Soprano about his rate being wrong.

109.    To keep Mr. Whiteman happy, Mr. Soprano offered to pay Mr. Whiteman "under the table" to get him to his rate of $22 per hour, but Mr. Whiteman refused to accept his offer.

110.    Mr. Whiteman told Mr. Soprano that if his paycheck was wrong again, he would be forced to resign so that he could find a job that would compensate him appropriately.

111.    Mr. Soprano apologized and again stated that it would be fixed.

112.    However, Mr. Whiteman's following paycheck again showed that he had been compensated at only $18.50 per hour.

113.    Because Mr. Whiteman could not afford to care for himself and his family while Defendants knowingly and intentionally violated state and federal wage theft laws, he was forced to resign on or around May 31, 2024.

114.    Mr. Whiteman has not received any compensation for his unpaid wages.

115.    After Mr. Whiteman was forced to resign, he reached out to Mr. Soprano about being compensated for his unused PTO – a policy which every other employee received who resigned.

116.    Mr. Soprano confirmed that Mr. Whiteman should receive his unused PTO and that Parry "paid out people with multiple [PTO] weeks left."

117.    At the time he resigned, Mr. Whiteman had a total of 65 hours of unused PTO.

118.    Although Mr. Soprano stated that Parry would provide that pay for Mr. Whiteman, Mr. Whiteman never received any payment for his unused PTO.

119.    Mr. Whiteman has also recently learned that for the majority of his employment, Parry failed to contribute to his 401k.

120.    Under Mr. Whiteman's employee agreement, Parry (and all the entities Parry owns and operates) had an employee plan which allowed employees to contribute to their 401k.

121.    In the plan, Parry agreed to match half of the employee's contribution up to 2%.

122.    On multiple paychecks, Mr. Whiteman contributed 4% of his paycheck to the retirement plan.

123.    However, Parry repeatedly failed to match its responsibility to pay its 2%.

## VI.    CAUSES OF ACTION

### COUNT I
### Violation of Fair Labor Standards Act, 29 U.S.C. § 203 et seq.,
### Failure to Compensate Plaintiff his Minimum Wages

124.    Plaintiff re-alleges and incorporates by reference paragraphs 1-123 as if fully set forth herein.

125.    Under 29 U.S.C. § 206, Plaintiff is entitled to his minimum wages for all hours worked.

126.    Throughout the duration of Plaintiff's employment, Plaintiff was consistently undercompensated his minimum wages.

127.    On or around October 5, 2022, Plaintiff was told by Mr. Soprano that he would be compensated at the rate of $22 per hour.

128.    Plaintiff was told that this would be his rate of pay for **any restaurant** he performed work at.

129.    However, Plaintiff was consistently paid at a rate less than $22 per hour multiple times.

21

130.    Moreover, after Plaintiff began working at Tucos, Plaintiff would often work a shift at either Tucos or Salem and then drive to the other restaurant to work a second shift **on that same day**.

131.    However, Plaintiff was never compensated for this traveling time between restaurants.

132.    Once Plaintiff was promoted to a Regional Chef, Plaintiff was required to travel between multiple different restaurants during the day.

133.    Again, Plaintiff was never compensated for this traveling time.

134.    Finally, Plaintiff was entitled to his unused PTO, which at the time, totaled 65 hours.

135.    Under 29 U.S.C. § 216, Plaintiff is entitled to all his unpaid minimum wages, an additional equal amount as liquidated damages, reasonable attorney fees, costs, and interest.

## COUNT II
### Violation of Fair Labor Standards Act, 29 U.S.C. § 203 et seq., Failure to Compensate Plaintiff Overtime

136.    Plaintiff re-alleges and incorporates by reference paragraphs 1-135 as if fully set forth herein.

137.    Parry was Plaintiff's "employer" under the FLSA because Parry was acting directly or indirectly in the interest of an employer in relation to an employee.  29 U.S.C. § 203(d).

138.    Under "the new test" in determining joint-employers, Parry is Plaintiff's employer because: (1) Parry had the ability to hire and fire Plaintiff; (2) Parry supervised and controlled Plaintiff's work schedule or conditions of employment to a substantial degree; (3) Parry determined the Plaintiff's rate and method of payment; and (4) Parry maintained Plaintiff's employment records.

139.    Moreover, all of Plaintiff's complaints and agreements were made with Jojo Soprano, Parry's Vice President at the time.

140.    All restaurants are owned and operated by Parry and Parry is receiving financial benefits from its relationship with these restaurants.

141.    Because all restaurants are essentially "alter egos" of Parry, Mr. Whiteman's hours should have been aggregated in determining his total hours worked.

142.    When Plaintiff's hours are aggregated, there are multiple pay periods in which Mr. Whiteman exceeded 40 working hours but was not compensated overtime.

143.    Under 29 U.S.C. § 216, Plaintiff is entitled to all his unpaid overtime wages, an additional equal amount as liquidated damages, reasonable attorney fees, costs, and interest.

## COUNT III
### Violations of Virginia Wage Payment Act, Va. Code Ann. § 40.1-29, et seq.
### Withholding of Plaintiff's Minimum Wages and Overtime Wages

144.    Plaintiff re-alleges and incorporates by reference paragraphs 1-143 as if fully set forth herein.

145.    By virtue of the acts described above, Defendants likewise violated the VWPA by withholding wages from Plaintiff.

146.    Under Va. Code Ann. § 40.1-29(J), Plaintiff is entitled to recover from Defendants all his unpaid wages plus an additional amount in liquidated damages, plus prejudgment at 8% along with the attorney fees and costs he incurred pursuing a remedy in this matter.

147.    However, because Defendants **knowingly** failed to compensate Plaintiff in accordance with state law, Defendants are liable for **triple** the amount of wages due.

## COUNT IV
### Retaliation in Violation of Fair Labor Standards Act, 29 U.S.C. § 203 et seq.

148.    Plaintiff re-alleges and incorporates by reference paragraphs 1-147 as if fully set forth herein.

149.    Throughout Plaintiff's employment, Plaintiff reported multiple violations of the FLSA directly to Mr. Soprano, Parry's Vice President.

150.    While Mr. Soprano apologized for the errors, Plaintiff never received any retroactive pay to compensate him for his unpaid wages.

151.    As a result of Plaintiff being consistently underpaid, Plaintiff notified Mr. Soprano that if his paychecks were not corrected, he would be forced to resign.

152.    Even though Mr. Soprano assured Plaintiff that the paychecks would be corrected, Plaintiff's following paycheck again showed that he was undercompensated.

153.    Plaintiff was therefore forced to resign to find work that would compensate him appropriately.

154.    Plaintiff was therefore constructively terminated.

155.    Under § 216(b) of the FLSA, Plaintiff is entitled to reinstatement, the payment of wages lost and an additional equal amount as liquidated damages. Plaintiff is further entitled to attorney's fees, costs, and interest incurred pursuing a remedy in this matter.

## COUNT V
### Retaliation in Violation of the Virginia's Whistleblower Statute
### Va. Code Ann. § 40.1-27.3

156.    Plaintiff re-alleges and incorporates by reference paragraphs 1-155 as if fully set forth herein.

157.    Plaintiff reported violations under the VWPA multiple times in good faith directly to Mr. Soprano.

158. In doing so, Plaintiff engaged in protected activity by opposing a practice made unlawful under the VWPA.

159. Because Plaintiff's wages were not corrected after Plaintiff made good faith complaints, Plaintiff was forced to resign to find an employer who would compensate him accurately.

160. By intentionally failing to comply with the VWPA, Defendants constructively terminated Plaintiff.

161. Under Va. Code Ann. § 40.1-27.3(C), Plaintiff is entitled to reinstatement, compensation for lost wages, benefits, plus interest, as well as attorney fees and costs.

## COUNT VI
### Violation of ERISA, 29 U.S.C. § 1001, et seq.
### Failing to Contribute to Plaintiff's Employee Plan

162. Plaintiff re-alleges and incorporates by reference paragraphs 1-161 as if fully set forth herein.

163. Throughout Plaintiff's employment, Plaintiff made multiple contributions to his employer-sponsored 401k plan.

164. Plaintiff was told that Defendants would match his contributions up to 2% of each paycheck.

165. However, Defendants failed to make multiple contributions to Plaintiff's 401k.

166. Under 29 U.S.C. § 1132(a)(1), Plaintiff is entitled to all benefits lost due to Defendants' failure to contribute to Plaintiff's 401k, along with attorney fees and costs.

## COUNT VII
## Common Law Breach of Contract

167.    Plaintiff re-alleges and incorporates by reference paragraphs 1-166 as if fully set forth herein.

168.    Throughout Plaintiff's employment, Parry's agent, Jojo Soprano, made multiple verbal offers to Plaintiff, which Plaintiff accepted.

169.    Sometime around October 5, 2022, Mr. Soprano told Plaintiff that if he started working at Tucos, Plaintiff would be compensated $22 per hour for **any restaurant** he performed work at.

170.    However, over the following months and consistently during 2023, Plaintiff was compensated at a rate lower than $22 per hour.

171.    Around April 2024, Plaintiff was told that his pay would be reduced to $18.50 per hour but Plaintiff would continue to be compensated for $22 per hour if he went to work at Six n Sky.

172.    Plaintiff accepted this offer but was again compensated at the rate of $18.50 per hour.

173.    Moreover, Plaintiff was told that Defendants would contribute to Plaintiff's 401k up to 2% and Plaintiff made numerous contributions of 4% to his 401k.

174.    However, Defendants did not match this rate of 2%.

175.    Under Virginia common law, Plaintiff is entitled to all damages which flow from those breaches.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Mr. Whiteman prays that judgment be entered in his favor and against Defendants as follows:

a.    That Defendants pay compensatory damages for all pay periods in which Plaintiff was not compensated at the rate of $22 per hour from October 5, 2022, plus an additional amount as liquidated damages;

b.    That Defendants pay compensatory damages for all pay periods in which Plaintiff was not compensated for his time while traveling between restaurants, plus an additional amount as liquidated damages;

c.    That Defendants pay compensatory damages for all unused PTO, plus an additional amount as liquidated damages;

d.    That Defendants pay compensatory damages for all hours worked in excess of 40 per week without being paid overtime premiums, plus an additional amount as liquidated damages under the FLSA;

e.    That Defendants pay compensatory damages for triple the amount of all pay periods in which Plaintiff was not compensated at the rate of $22 per hour from October 5, 2022, compensatory damages for all pay periods Plaintiff was not compensated overtime, compensatory damages for Plaintiff's time spent while traveling between restaurants, and compensatory damages for all unused PTO because Defendants **knowingly** withheld Plaintiff's wages in violation of the VWPA;

f.    That Defendants pay all damages arising out of Defendants' common law breaches of contract;

27

g.    That Defendants pay compensatory damages for all lost wages, bonuses, benefits, and promotions Plaintiff lost and continues to lose as a result of Defendants' unlawful termination;

h.    That Plaintiff be reinstated to his position or be paid an appropriate amount in front-pay in lieu of reinstatement;

i.    That Defendants pay compensatory damages for all benefits lost due to Defendants' failure to contribute to Plaintiff's 401k;

j.    That Plaintiff be awarded all reasonable attorney fees and costs, pursuant to 29 U.S.C. § 216, 29 U.S.C. § 1132((g), and Va. Code Ann. § 40.1-27.3;

k.    That Plaintiff be awarded post-judgment interest; and

l.    That the Court award such other and further relief as is just, equitable, and proper.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

February 12, 2025

STANLEY WHITEMAN

By: /s/ Christopher E. Collins
Christopher E. Collins
*Counsel for Plaintiff*

Christopher E. Collins (VSB No. 90632)
Mia Yugo (VSB No. 92975)
Dylan Craig (VSB No. 100709)
**YUGO COLLINS, PLLC**
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
Direct: (540) 855-4791
chris@yugocollins.com
mia@yugocollins.com
dylan@yugocollins.com

*Counsel for Plaintiff*

28